Good morning, Your Honors, and may it please the Court. My name is Bill Reynolds, attorney for Appellant John Dragus. Dragus asked the Appellate Court to reverse the District Court's decision to grant summary judgment in favor of his disability insurance company and against him. The case was decided on cross motions for summary judgment. The case is by definition an arbitrary and capricious example of a decision. The evidence of record overwhelmingly establishes that Dragus meets the definition of his disability insurance policy because of the long-standing neck impairment he's suffered for many years. Due to uncontrolled pain in his neck and arms, he cannot tolerate static positions for any length of time. He cannot regularly rotate his neck. He cannot work the long, interrupted hours required of his position. And he is limited in his ability to perform the other basic physical requirements of his job. There is no question between any treating doctor in the record that Dragus possesses these limitations, and there is no question of his credibility. The combination of his pain, medications, and associated depression and anxiety also produced documented cognitive impairments affecting his memory, his sustained attention, his processing speed, his verbal fluency, and his problem-solving. Those findings were made in the notice- Metropolitan Life versus Glenn. Is this an issue of first impression in this circuit? And my last little part of that is, are you arguing for a law, for a rule, I should say, that when the structural conflict exists, discovery should always be allowed? We haven't really questioned the availability of discovery here. We've asked the court to consider his Social Security Disability Insurance decision, which came after the final decision of the administrator. We believe that that is allowable under this case. And, well, it's tenuous whether it be allowed. Under this current circuit law, unless he can show some sort of, that the insurance company basically had notice of it beforehand and refused to acknowledge it, it could be entered into the record. Here, the decision came after the final decision was made. Reliance Standard did know that his insurance application, Social Security Disability Insurance application was pending. In fact, they compelled him to file the application. And now, if benefits are awarded, they will be able to reduce the amount that they pay him on a monthly basis based on that award. That was the basis for us asking for the record to be expanded to allow that. And in this case, too, there is a question of whether the arbitrary and capricious standard review should actually apply. Reliance Standard and the district court found that they failed to meet the basic minimum timing threshold for issuing an initial decision. Reliance Standard should have issued an initial decision within 105 days. They were over two months overdue on that. And the penalty from the Department of Labor regulations is that they are stripped of discretion. And if they're stripped of discretion, then there's no question that the additional evidence should be allowed in this case. Well, the penalty actually is that a failure to exhaust is excused. Correct. Not that the standard of review changes. Well, the standard of review also changes, Your Honor. It's been followed in. Excuse me just a minute. I would suggest you refrain from making. Just sit there quietly. Go ahead. Your Honor, the failure to substantially comply with the ERISA claims regulations does alter the fact. And I do believe that the district court found that as well. And that's what HALO has said as well, that HALO is the Second Circuit case that we're asking this circuit to adopt. That there is basically that any discretionary authority is stripped from the insurance company. And it proceeds under a de novo standard of review. But that's not exactly what the regulations say. The regulations excuse non-exhaustion for failure to comply with claims procedures. Correct. And Dregas could have, at that time, filed his lawsuit. Right. He did not. But he continued to pursue the administrative remedies that were available to him, including an appeal. Correct. So he did exhaust. And so the remedy for the untimeliness that is provided in the regulations, which is that non-exhaustion is excused, is just not in play here. If the non-exhaustion is excused, the district court was basically saying, and the way the regulations are written, is that Dregas, at the point of his initial application, would have been ready to file a lawsuit if Reliance Standard had not issued its decision within the allowable time. Right. He didn't do that. Correct. He proceeded through the administrative process. There was a decision. So the untimeliness just falls by the boards. Well, there was a damage to Dregas. The two months that he had to wait to receive an initial decision, he lost insurance coverage. He actually was unable to go back to his doctors once he reestablished insurance coverage in January. Now, I know Reliance is saying, well, we would have denied the claim anyway, so there is no harm because we're not going to pay. That's why we're asking this court to adopt HALO. We're basically saying that there should be strict compliance with these and that he shouldn't have to hire a lawyer. This court in Edwards v. Briggs and Stratton said that ERISA is a balancing act, and we don't want to get into questions about whether or not there's substantial compliance with missing deadlines between a month or two months or a day or two days, anything like that, because it's very fact-specific. And in Edwards, the situation was reversed. A planned participant failed to meet the deadline to file an appeal, and the court said, tough, you have not complied with the regulations, and because of that, we're not going to grant you anything. And here, we're saying the same thing, that there shouldn't be a two-tiered level of damages based on either the corporation or the individual. And there's no question that Dragas himself should not have had to hire a lawyer just to file an application for benefits. That's against what ERISA stands for. There's a balancing act between costs to the participant and the incentive for the employer to offer these plans, and that balancing act does not encompass Dragas having to hire a lawyer in the event that he may or may not, or that the insurance company may not meet the regulations. I'm not sure what that has to do with the standard of review question. Well, the standard of review is, the question is whether or not if the failure to meet the regulations strips Reliance Standard of its authority. We contend that it does, and it's a complicated issue. Essentially, if exhaustion is not required, then Dragas can file a lawsuit, and because they never issued a final decision, there's nothing to grant discretion to. And we ask for the same, basically the same effect. Whether or not the regulation specifically says any language that reserves discretion is stricken, we basically ask the court to adopt the HALO decision and say yes. Why is that a correct interpretation of the regulation? It's correct because that's what the Department of Labor argued in the HALO case in their amicus brief. They said that compliance with the regulations, we have this here for a reason. We've decided that the insurance company has to meet a timing deadline or else the plan participant is harmed. And if we allow them to basically skirt that obligation, as Reliance has shown to do again and again, we cited two cases in our briefing that just in the last 12 months in the circuit alone, Reliance failed to meet deadlines. It's a problem that happens again and again, and we're asking the court to address it here. I know that it will overturn precedent, but we think that the precedent is, we think that that's appropriate, and we think the Second Circuit has it right here. Did Dreykus ever offer an alternative to the job description adopted by Reliance? It seems clear that he objected to the use of old descriptions from the Dictionary of Occupational Titles, but why would it be arbitrary and capricious to use that resource in the absence of any good alternative? Dreykus didn't need to supply an alternative because his job description was already there in the record, and Reliance has never said why that job description shouldn't carry the day. Dreykus has also offered on numerous occasions, including in his initial phone call, the nature and scope of the work that he had to do. There's no reason why they have to rely on the Dictionary of Occupational Titles. If there was a question of whether or not specific duties in his occupation were required at a national level, perhaps. But his job exists, his job description exists, and the way that it's done, it seems to be the way that it's done everywhere. Dreykus worked for McCormick Place. He was the only point person to set up the IT requirements for all of the individual vendors at a giant convention. He had to coordinate internet, he had to coordinate wireless internet, grounded internet, telephone, all of these things. He had to keep a number of things in his mind straight. They were working multiple conventions at the same time. It's a very complex job, it's a very technical job, and none of that is really encompassed by the occupations that Reliance put forth. And I think the labor market survey that they did on his appeal really highlights that, because the findings of the labor market survey seem to be wildly different than the occupation and the material duties of the occupations that were in the DOT descriptions. The labor market survey identified a job that was basically medium duty, required him to lift and carry 50 to 75 pounds. That's not what he did. He sat at a computer most of the day, we don't dispute that. He did have to walk around the grounds, he did have to inspect. It's probably a light duty job, but his problems with what he's been saying, what his doctors are saying, is he can't sit and look at his computer. And his medications and his pain are causing cognitive problems. They're causing him to make mistakes. Dragus's medical history is rather severe. I want to save some time for the rebuttal, you better hang in there. I'll reserve a minute. I just want to say something about his actual job and his actual disability. In 2011, he first had spinal surgery, three-level spinal surgery. It didn't work. He went back for procedures and procedures and procedures, nothing worked. He had a procedure done where they burned the ends of his nerves in his spine to try to deaden the sensation he was feeling. That didn't work. And then he did a month-long intensive pain management program at the RIC. That didn't work. Unfortunately, he can't work, and none of the doctors that ever examined him said that he could work. I'll preserve the rest of my time. Thank you, Your Honor. Thank you. Ms. Kirsting. It's your turn at bat. You can demonstrate your enthusiasm for programs any way you want. Thank you, Your Honor. May it please the Court opposing counsel. Good morning. Edna Kirsting for the defendant, I believe, relying standard. A couple points I wanted to raise with the Court today. The Department of Labor regulations are what were mentioned several times during the portion that my esteemed colleague presented. We agree with the Court on the fact that the Department of Labor regulations do not change the standard of review, do not require a standard change in case of a late decision. In addition to that, we would like to raise the Court's attention to the tolling provisions. The Department of Labor regulations specifically allow a tolling of the time that is provided to an insurance company slash claims administrator to make a determination based on the need and the wait time that's allotted to receive requested documentation. That is what happened here, and I believe we set that out in our brief. There were certain documents that were requested, updated medical records from Mr. Dreges' medical providers, and it took, to some extent, over 70 days to receive those medical records. As a result of that, I want to ask you something that is bothering me greatly in this case. Yes.  and has procedures in place to minimize the effect of any conflict of interest. That's correct. But Reliance also refused, absolutely refused, to back up that claim with evidence of its policies and procedures. What is the evidence in the record that Reliance minimized the structural conflict here? To me, the company opened the door to this type of discovery by claiming that these procedures minimized the conflict, but absolutely refusing to back up its claim. What is specifically in the record, Your Honor, is first of all the referral of the claim to independent vendors, the payment of independent vendors much rather than physicians, and the receipt of reports from physicians that have no affiliation with Reliance Standard. There is no contact between those physicians and Reliance Standard, and there is no other exchange of goods and services between those physicians that render opinions at Reliance Standard. Yes, but did any of those doctors hired to evaluate Dragas' claim assess the combination of his physical and mental limitations? And if so, where in this record will we find that analysis? Reliance Standard specifically requested two of the physicians that it consulted prior to the denial of Mr. Dragas' claim, which goes way beyond what the Department of Regulations require my client to do, to converse and to actually discuss their respective positions to make sure that Mr. Dragas is fully assessed with regard to the emotional and psychological components of his claim as well as the physical components of his claim, Judge. And where in the record will we find these analyses? That would be in the report. There were two reports done initially. That's Dr. Weisberg and Dr. Daniel. Dr. Weisberg and Dr. Daniel conversed. Dr. Daniel, I believe, references and says that the discussion in detail is contained in Dr. Weisberg's report, and the discussion is contained in the second report. Now, of course, neither of them ever saw Mr. Dragas, did they? Correct, but that's also not what the Department of Labor Regulations require. We are supposed to be held to the standard of the Department of Labor Regulations, but that should apply also the other way around. The Department of Labor Regulations are the gold standard. They provide what's a full and fair review. My client went beyond what the Department of Labor Regulations required. It consulted physicians, independent physicians, no affiliation with relying standard prior to the denial of the claim. It consulted two additional ones with regard to the emotional aspects as well as the physical aspects of the claim prior to the final determination. And what is significantly more important, Your Honor, is relying standard allowed a dialogue here, which is not in the Department of Labor Regulations. My understanding is it's been discussed with regard to the new ones that are in the air and may be coming for 2018, but as far as the old ones which are applicable to this claim, that is not something my client was required to do, and it did. It allowed Mr. Dragas and his counsel input. It allowed Mr. Dragas' physicians input on the opinions that were obtained, even on the labor market survey. Again, something my client was not required to do. So to the extent that we look to. Okay, now let me talk about something your client was required to do. I am wondering on what basis did Reliance refuse to produce the claim file and administrative record in the district court. I was really surprised to see that the district court had to order Reliance to produce the most basic relevant documents. Judge, Reliance never refused to produce the administrative record. We just hadn't done it yet at that point. Our submission makes it clear that we never refused to do so. The court simply agreed with us that that's the only document that should be produced and provided us with a date. It was a timing issue possibly on our part, but there was no refusal, Your Honor. We rely on the administrative record just as much as the plaintiff does. So, no, there's never been any refusal by my client in any case ever to produce the administrative record. Does Reliance keep any statistics on how often a claim meets the Social Security definition of disability, which is awfully hard to do as we all know, but fails to meet Reliance's standard? No, my client does not do that. And please keep in mind at the time of... Do you have comparable evidence related to the structural conflict of interest? Pardon me? And if not, why not? Sorry, could you repeat your question? Well, I'm just wondering if that would be discoverable evidence that would be related to the structural conflict of interest. And if not, why not? The statistical information? It's not maintained. It's not something my client has. A client can actually meet Social Security definitions of disability, but Reliance says, no, no, you're not disabled. My client does not keep track of that. But we do consider the approval of Social Security as an essential portion in a possibility for entitlement, meaning somebody who is not approved for Social Security disability benefits has a significantly harder time achieving benefits. However, though, given the fact that we consider the Social Security Disability Benefit Award as being easier to meet given the grid rules, given the burden shift, given the treating physicians rule that would not apply to my client than the entitlement under the policy, it doesn't work the other way around. You see, it seems to me that Mr. Dragas has a good argument that we shouldn't simply credit Reliance's claim that it shielded itself from the structural conflict. Reliance should have to produce evidence that it had appropriate policies and it followed them in this case. The district court here relied on cases that predate metropolitan life to conclude that Reliance was not required to produce that evidence. But if the Supreme Court found an inherent conflict whenever an insurer both decides whether to pay and then is actually obligated to pay, it just might be time for the discovery rule to change. I give us a good reason why insurers with a conflict of interest shouldn't have to prove that they've taken steps to shield the payment decision from that conflict. The current... Sorry. May I respond? The lag is sometimes a little difficult. The current law in the Seventh Circuit puts the burden with regard to discovery on the claimant to show whether there is a specific conflict of interest or any taint in the record. That's the burden that Judge Aspin asked Mr. Dragas to satisfy and found that he wasn't able to. Samian is... But you see, what you have said here, what Reliance has said here is this. There is no conflict because we, Reliance, say so. No, that's not what I'm saying. We say there's no conflict, so there's no conflict. I mean, if that isn't Alice in Wonderland, I don't know what is. No, we're not disputing, Your Honor, that there is a structural conflict of interest. That is the case in these cases. The payor and the adjudicator is the same individual. What we're saying is we've taken steps to minimize the importance of the conflict of interest and hence the weight that this Court should give the conflict of interest when looking at the evidence. We believe that the evidence that was amassed in this case in favor of a denial of claim is substantial. We believe that as a result of the steps that were taken by my client to ensure a full and fair review, which is specifically the dialogue that my client was trying to engage in and was engaging in with Mr. Dragas and his counsel, which actually went, if you will look at the administrative record, three times back and forth with regard to my client submitting the evaluator's reports for comment, then submitting the addenda for comment, as well as submitting the labor market survey for comment to Mr. Dragas' counsel, something, again, which is not something a vicaria will do and is certainly not required under the regulations. Those types of steps minimize the potential for attained to the claim determination. We don't dispute that my client has a structural conflict of interest. That's not something we can dispute, Your Honor. But what we do advocate for is that in this specific case, given the steps that Reliance Standard has taken, given the fact that independent consultants were involved much rather than in-house physicians, that a dialogue was ensured between Mr. Dragas and my client with regard to the medical opinions before a final determination was made, technically allowing Mr. Dragas three additional possibilities of review and to be heard with regard to his opinions. Those points is what we are raising with regard to this court's weight, but with regard to the weight that this court should give the conflict of interest, which exists in this case. You've got a man here who had invasive and risky treatments. He underwent a three-level cervical spine fusion, steroid injections, a rhizotomy, which is, of course, a surgical severing of nerve roots at the spinal cord with an electrical probe, physical therapy, narcotic pain medications, two months, two months, full-time intensive treatment at the Rehab Institute, now known as the Shirley Ryan Ability Lab. Some of those treatments cause cognitive memory problems, of course, depression and anxiety. Social Security says he's disabled. I am very worried about this case. With regard to a discretionary review, Your Honor, it is not about agreement with the decision. It's review of the decision and whether it's supported by substantial evidence. Well, that's where you and I really go this way. We have a neuropsychological evaluation, Your Honor, which basically contests the fact that Mr. Dragas had cognitive deficits. We have a physician that says that his pain is linked to his emotional state. We have two physicians who state that his emotional state... We have physicians who never, ever examined him, never saw him. His own physician says that the pain is linked. Every treating physician this person ever had maintains he is unable to work at his... But he was, after his specific rehabilitation stay, he was released to go to work. He was okay. His physician released him to return to work. And on top of that, it was his own neuropsychologist who opined that he did not have cognitive deficits, and it was his own treating physician who stated that the pain was linked to his emotional conditions. And I think I'm done, Your Honor. All right. Thank you. Unless there are any more questions for me? Apparently not. Thank you. Thank you. Mr. Reynolds. I don't even have a voice left. Sorry. You have three minutes, Mr. Reynolds. Judge Roeburn, to address some of your points, we would welcome the ability to gauge an additional discovery into the matters that you discussed. And I think that perhaps a description of what happened at the district court might be helpful. When we filed our suit, Reliance Standard immediately moved to limit any discovery and to apply the arbitrary and capricious standard of review. Based on our review of the policy, we said arbitrary and capricious does probably apply. But we disputed that discovery shouldn't be engaged. At this point, the administrative record had not been produced. In the Seventh Circuit, the Semian standard has been softened, which is the discovery standard. But basically, the Seventh Circuit says, if you can point to specific instances where it's troubling that there may be a conflict of interest or there's something else that deserves additional scrutiny, we'll open up the record a little bit and we'll let you engage in that discovery. So we could potentially take a deposition of a claims administrator if we could point to somewhere in the record where the claims administrator said, I'm not going to consider this or just ignored something, and it's very plain. But we didn't have the administrative record at that point. So basically, the district court asked us to argue and point to instances where we couldn't do it. And in that ruling is when he said, okay, no discovery, but Reliance Standard has to produce the administrative record. And that's where that ruling comes from. I think that counsel says that the four doctors that Reliance hired were independent. I think the independence is a question for the court. She discusses that they discussed the case internally between themselves, but no doctor ever called any of Dragas' doctors to ask them why they found the way that they did. In fact, one of the doctors, Dr. Weisberg, specifically notes in his report that he was not asked to call Dragas' doctors. That's at AR-976. Same thing, after appeal, Dr. Rader and Dr. Freeman, neither one of these doctors ever called any of Dragas' treating doctors. But that doesn't go to the question of their independence, though. Your argument about the conflict of interest requires you to come forward with some reason to believe that there was more Reliance could have done to ensure independent evaluations. And I haven't heard, nor did I see in the briefs, any suggestion about what more could have been done to ensure their independence. Independence here could have been a fair evaluation, and a fair evaluation includes calling the treating doctors or performing an in-person examination. Whether the evaluation was fair is sort of folded into the arbitrary and capricious substantive standard. I'm talking about the question of independence, which gets you out of that standard of review if the structural conflict of interest is not accounted for by the plan. And here, the plan accounted for that structural conflict by sending this out for independent evaluation to four independent doctors, and you haven't suggested that they were not independent. I suppose for us, the suggestion that they're not independent is based on the findings of their reports, because that's what we're limited to. We weren't able to engage in any other discovery. All I can say is that some of these doctors are routinely engaged by Reliance, or other insurance companies, and have come up in other cases. And we can cite to those cases if you'd like. But the question is really, what are they paying for? And I think the doctors knew what Reliance was paying for, and what they were paying for was a decision that supported their position, and against Trages' position. Thank you, Your Honours. Thank you. The case is taken under advisement. Our thanks to both counsel.